## EISEMAN & LANDSMAN v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12228.· Decided Feb 29, 1932

MAUCK, PJ, MIDDLETON and BLOSSER, JJ, (4th Dist), sitting.

Messrs. Orgill, Maschke and Wickham, Cleveland, and I. F. Loux, Cleveland, for plaintiff in error.

Ray T. Miller, and T. A. Burke, Cleveland, for defendant in error.

MAUCK, PJ.

One assignment of error relates to the alleged misconduct of the prosecuting attorney in the cross examination of the defendant Eiseman. The prosecuting attorney had asked the defendant if under the name of Cooper he had not gotten $22,000 from one Isaac Goldman in Detroit. His counsel objected but before the objection was passed upon the accused answered in the negative. The prosecuting attorney then asked if he had a transaction with a man by the name of Isaac Goldman in Detroit. An objection to that question was sustained. Defendant was then asked if he had forfeited a bail bond in York, Pennsylvania. An objection was interposed and overruled. The defendant answered in the affirmative, and without objection answered a like inquiry as to a transaction in Atlantic City. He was then asked if he had been arrested in Atlantic City. He answered "No sir." Thereupon his counsel interposed an objection and the objection was sustained. We see no impropriety in the conduct of the prosecuting attorney nor anything that adversely affected the interests of the accused.

Further complaint is made in regard to the charge of the court in two or three minor particulars. There is no substance to any of these complaints.

The principal question in the case is whether under the established facts the accused were guilty of the crime of larceny. Certainly the most hopeful view that might be taken of their case is that they were guilty of obtaining money under false pretenses or of embezzlement, and not of the technical charge of larceny.

Mrs. Silverberg and her daughters were living for a season in New York City where they made the acquaintance, under another name, of the defendant who is known in this record as George Eiseman. There is some question as to whether Mrs. Silverberg made the acquaintance of Landsman through a marriage broker or not, but there is some evidence that Mrs. Silverberg looked with favor upon Landsman as a possible son in law. She invited him to come to Cleveland when she resumed her residence in this city, and this he did. He and Eiseman made their headquarters at a hotel in the vicinity of Mrs. Silverberg's home. Mrs. Silverberg was known by the defendants to have a large amount of easily accessible cash and they knew that she had lost a sum of money in a bank failure in New York City. They conducted a sedulous campaign to prejudice her against Cleveland banks, advising her to draw out her money and give it to them to embark in some ambitious real estate projects which they attempted to convince her offered safety and profits. After a short campaign they induced Mrs.

Silverberg to withdraw something like $22,-000 in different Cleveland banks, and they generously furnished a brief case in which she could put the money. She took the money to her home where it was concealed over night. On the next day Landsman was in her home. All parties agree that he went to the Silverberg residence without the money and all agree that he left the home with the money. How he got possession of the money is disputed. Landsman was expected back at the Silverberg home for dinner. He did not show up. It was then learned that immediately after getting the $22,-000 both defendants had checked out of the hotel and their trunk was traced to Detroit. They were soon located in a hotel at Detroit under the names under which they were indicted and tried, which were not at all the names by which they were known to Mrs. Silverberg and her family. The money taken consisted of twenty-one $1,000 bills and other currency. Some of this had been spent for a diamond ring. The larger bills had been exchanged for bills of smaller denominations. This money had been placed in a safety deposit box in Detroit, the keys therefor being found in Eiseman's possession. Landsman upon his arrest denied any knowledge of the Silverbergs and any connection with the transaction. The evidence shows that on more than one occasion when Mrs. Silverberg had been with these men she was taken sick, and there is some intimation that she had been drugged but there is nothing definite shown along this line. It is apparent, however, that if she were not drugged she was in a highly nervous condition and suffering from some physical disorders that account for her lack of definite knowledge upon some of the features of the case. Some of the testimony of her and her daughter indicates that without her consent Landsman took the money at her home, and some support to this view is given by the fact that the brief case was left, and in it some paper and glass, well calculated to deceive one lifting the brief case in the belief that it still contained the money that Landsman had walked away with. Other parts of Mrs. Silverberg's testimony indicate that more or less voluntarily she yielded the custody of this money to Landsman. The evidence is, however, clear enough that if she did voluntarily yield custody of the money to him that custody had been obtained by trickery and fraud of these reptiles, and that this trickery and fraud is sufficient to take the place of the trespass that is said to constitute one of the essential elements of the crime of larceny. We deem it unnecessary to recite the details more fully.

The Supreme Court of Massachusetts in Commonwealth v Barry, 124 Mass. 325, distinguishes between the offense of embezzlement, obtaining property under false pretenses and larceny in a particularly lucid way. We quote:

"If a person honestly receives the possession of the goods, chattels or money of another upon any trust, express or implied, and after receiving them fraudulently converts them to his own use, he may be guilty of the crime of embezzlement but can not be of that of larceny except as embezzlement is by statute made larceny. If the possession of said property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offense is that of obtaining property by false pretenses, provided the means by which they are acquired are such as are in law false pretenses. If the possession is fraudulently obtained, with intent on the part of the person obtaining it at the time he receives it to convert the same to his own use, and the person parting with it intends to part with his possession merely, and not with his title to the property, the offense is larceny."

These distinctions were approved and followed in People v Miller, 169 N. Y. 339, 88 Am. St. 546. The principle referred to is discussed and the supporting cases collected in Channock v United States, 11 A.L.R. 799-803.

The defendants in this case, if in fact they took this property with the owner's knowledge, did so intending at the time to convert it to their own use, and Mrs. Silverberg never had any intention of parting with her title to the money. In whatever manner the defendants acquired custody of the money larceny was accomplished.

The record is free from error.

The Judgment is affirmed.

MIDDLETON and BLOSSER, JJ, concur.